ORIGINAL

FILED
2013 AUG -9 P 1:18
RICHARD W. WIEKING
CLERK, U.S. DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA

1 LUCAS VALLEY LAW
  MARK K. de LANGIS (SBN 190083)
2 2110 Elderberry Lane
  San Rafael, California 94903
3 Telephone: (415) 472-3892
  Facsimile: (415) 472-3977
4 mdelangis@lucasvalleylaw.com

5 Attorney for Plaintiffs
  APL CO. Pte., LTD. and
6 AMERICAN PRESIDENT LINES, LTD.

7

8           UNITED STATES DISTRICT COURT

9           NORTHERN DISTRICT OF CALIFORNIA

10

11 APL CO. Pte., LTD., a corporation, and      CV No. 13 3706   JSC
   AMERICAN PRESIDENT LINES, LTD., a
12 corporation,
                                               COMPLAINT FOR:
13          Plaintiffs,
        v.                                     1. BREACH OF MARITIME
14                                                CONTRACT;
   IMPX TRADERS INC., a corporation, and       2. OPEN ACCOUNT;
15 MALLESH HIRIYURI aka MALLESHWAR T.          3. COMMON COUNT FOR SERVICES
   HIRIYUR, an individual.                        PERFORMED
16
            Defendants.
17

18

19
        Plaintiffs APL Co. Pte., Ltd. and American President Lines, Ltd. (collectively "APL")
20
   complain against defendants IMPX Traders Inc. and Mallesh Hiriyuri aka Malleshwar T.
21
   Hiriyur and allege as follows:
22
                            **JURISDICTION AND VENUE**
23
        1.   The following claims are admiralty and maritime claims within the meaning of
24
   Rule 9(h) of the Federal Rules of Civil Procedure and fall within the admiralty jurisdiction of this
25
   Court under 28 U.S.C. section 1333.
26

COMPLAINT

2. Venue is proper in the Northern District of California because a substantial part of the contract's terms and conditions were negotiated by and between APL and defendant in the Northern District of California via APL's contract administration division, located in Oakland, California. In addition, in the maritime contract underlying this action, the parties agreed to subject themselves to the jurisdiction of the courts of the Northern District of California.

## PARTIES

3. Plaintiff APL Co. Pte., Ltd. is, and at all relevant times was, a corporation duly organized and existing under the laws of Singapore and registered to do business in the State of California.

4. Plaintiff American President Lines, Ltd. is, and at all relevant times was, a corporation duly organized and existing under the laws of the State of Delaware. Plaintiff American President Lines, Ltd. is registered to do business in California.

5. APL is informed and believes, and on that basis alleges that defendant IMPX Traders Inc. ("IMPX") is, and at all relevant times was, a corporation duly organized and existing under the laws of the State of Delaware, with its principal place of business in the State of Pennsylvania.

6. APL is informed and believes, and on that basis alleges that defendant Mallesh Hiriyuri aka Malleshwar T. Hiriyur ("Hiriyuri") is, and at all relevant times was, an individual residing in the State of Pennsylvania.

7. Although IMPX was at all times herein mentioned, purportedly a corporation, APL is informed and believes that at all material times hereto defendant Hiriyuri personally supervised, controlled, dominated, and operated IMPX as his own business and alter ego.

8. APL is informed and believes that there exists, and at all times since the formation of IMPX there has existed, a unity and identity of interest and ownership between IMPX and Hiriyuri such that there is no individuality and separateness between them and that, in

COMPLAINT

2

fact, Hiriyuri is the alter ego of IMPX and IMPX is the alter ego of Hiriyuri. Hiriyuri placed himself as IMPX's President, Vice-President, and Treasurer. From these positions, Hiriyuri was able to control and dictate IMPX's operations, and on information and belief, did so.

9. Adherence to the fiction of the separate existence of IMPX as an entity distinct from Hiriyuri would permit an abuse of the corporate privilege and corporate form, and would sanction the wrongdoing of Hiriyuri and IMPX described in more detail below. The asserted separateness between Hiriyuri and IMPX should be disregarded. Hiriyuri is responsible for IMPX's debts.

10. On information and belief, all the acts and omissions described herein alleged to have been done by any defendant or defendants were performed by, and attributable to, all defendants, each acting as agent, employee, alter ego, and/or under the direction and control of the others, and said acts and omissions were within the scope of said agency, employment, alter ego status, and/or direction and control. Whenever and wherever reference is made in this complaint to any acts of defendants, such allegations shall also be deemed to mean the acts of each other defendant acting individually or jointly and severally

## GENERAL ALLEGATIONS

11. At all relevant times, APL was and still is an ocean carrier of goods for hire, *inter alia*, between U.S. and foreign ports.

12. On or about October 4, 2010, APL on the one hand, and Hiriyuri and IMPX on the other (hereinafter collectively "Defendants"), entered into a written service contract, number WB10/0226.

13. Pursuant to service contract number WB10/0226, APL agreed to transport and convey various commodities from the United States to India, Pakistan, and Sri Lanka.

14. As part of the service contract entered into between Defendants and APL for the transportation and carriage of Defendants' cargo, Defendants expressly agreed to tender their cargo in a quantity sufficient to satisfy a Minimum Volume Commitment ("MVC") as outlined

in the service contract between the parties. Specifically, the service contract stated:

> 3. MINIMUM VOLUME COMMITMENT; DEAD FREIGHT; BOOKING
>
> (a) Merchant shall tender not less than the MVC, including specific sub-MVCs, if any, as set forth in an Appendix, during the term hereof. Shipments shall be deemed within the scope of this Contract and shall be counted toward the MVC if made by Merchant's parent, subsidiary, or other affiliated companies or entities under common control, or by an authorized agent in behalf of any such entity, all of which entities must be identified on the signature page or Appendix hereto. Merchant shall remain responsible to Carrier for all obligations of non Merchant parties shipping cargo under this Contract.

15. The MVC, set forth at Appendix B, expressly obligated Defendants to tender a minimum quantity of carriage of 25 freight equivalent units ("FEU") before the contract expiration date of September 30, 2011.

16. The service contract between APL and Defendants contained a liquidated damages provision (known in the trade as dead freight) which provided protection to APL in the event that Defendants failed to meet the MVC, as they had promised. The liquidated damages provision provided that:

> 3. MINIMUM VOLUME COMMITMENT; DEAD FREIGHT; BOOKING
>
> . . . .
>
> (b) If Merchant fails to tender shipments in sufficient quantity to meet Merchant's undertakings as set forth in the foregoing subparagraph 3(a), Merchant shall, within 30 calendar days of receipt of Carrier's invoice, pay deadfreight in the amount of $350 for each FEU by which the MVC (or sub-MVCs, as the case might be) exceeds the volume actually tendered. Such deadfreight shall be the Carrier's sole and exclusive remedy in the event Merchant fails to meet its MVC obligations under this Service Contract.

17. After the contract expired on September 30, 2011, APL reconciled the contract to determine whether Defendants had fulfilled their MVC and shipped the number of FEUs as promised.

18.	APL determined that during the contract's term, Defendants only shipped 3.5 FEUs with APL for transport and carriage under Appendix B. As stated above, Defendants had promised to ship 25 FEUs under the contract, but only shipped 3.5 FEUs during the service contract's terms. In failing to ship the 25 FEUs, Defendants came up short of their contracted volume by 21.5 FEUs. Accordingly, under the terms of the contract, Defendants became obligated to pay APL a liquidated damages charge ("dead freight") of $7,525. ($350 for each FEU short of the MVC [$350 x 21.5 = $7,525]).

19.	On January 20, 2012, APL issued an invoice to Defendants for $7,525 and presented the invoice to Defendants for payment. According to the service contract's terms, Defendants had 30 days, or until February 20, 2012, in which to pay the invoice, or Defendants would be in breach of the service contract.

20.	Defendants failed to pay the invoice within 30 days. And, despite further demands by APL, Defendants have failed to pay the dead freight owed to APL in connection with the above-described service contract and there is due and owing to APL, from Defendants, the amount of $7,525 in dead freight charges, in connection with the above-described service contract.

## FIRST CAUSE OF ACTION

### (Breach of Maritime Contract)

21.	APL refers to, and by that reference incorporates as if fully set forth herein, each and every allegation set forth in paragraphs 1 through 20, inclusive, hereinabove.

22.	Pursuant to the terms of the service contract entered into between the parties, Defendants expressly agreed that if they failed to tender the MVC, they would pay the dead freight charges due and owing under the above-described service contract.

23.	APL has performed or tendered performance of all of its obligations under the service contract.

24. Defendants materially breached the terms of the service contract entered into between the parties by failing to tender the appropriate amount of FEUs under its MVC, and by failing pay the dead freight charges within 30 days of receiving APL's invoice, as promised.

25. As a direct and proximate cause of Defendants' breach of the service contract by failing to tender the appropriate amount of FEUs under their MVC, and by failing to pay the dead freight charges, APL has suffered damages in the amount of $7,525 (excluding interest, costs and attorneys' fees).

## SECOND CAUSE OF ACTION

### (Open Account)

26. APL refers to, and by that reference incorporates as if fully set forth herein, each and every allegation set forth in paragraphs 1 through 25, inclusive, hereinabove.

27. Defendants owes APL the sum of $7,525 that is due with interest since February 2012, in accordance with the terms of the service contract more fully described above.

28. APL has made demand for payment upon Defendants and Defendants have acknowledged receipt of said demand.

29. Defendants have refused to pay and continue to refuse to pay the outstanding sum due and owing.

## THIRD CAUSE OF ACTION

### (Common Count - Services Performed)

30. APL refers to, and by that reference incorporates as if fully set forth herein, each and every allegation set forth in paragraphs 1 through 29, inclusive, hereinabove.

31. Defendants are indebted to APL for the amount of $7,525, for the services APL contracted to perform at Defendants' request.

32. Defendants have failed to pay anything towards the dead freight charge of $7,525; therefore, APL is entitled to recover $7,525, excluding interest, for services performed.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs APL Co. Pte., Ltd. and American President Lines, Ltd. pray as follows:

1. The Court enter judgment in APL's favor for $7,525, the full amount of APL's claim;
2. The Court award APL prejudgment interest on all sums as provided by law;
3. The Court award APL its costs of suit;
4. The Court award APL its attorneys' fees as per the terms of the service contract;
5. The Court award APL such other and further relief as the Court may deem proper.

DATED: August 9, 2013

LUCAS VALLEY LAW

By: _____
Mark K. de Langis
Attorneys for Plaintiffs
APL Co. Pte., Ltd. and
AMERICAN PRESIDENT LINES, LTD.